IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Antonio Lamont Williams (126811), )
)
      Plaintiff, )
) Case No. 17 C 50388
  v. )
) Hon. Iain D. Johnston
Nathan Milne, )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

In this *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983, Plaintiff Antonio Williams alleges Rockford Police Officer Nathan Milne used excessive force while arresting Plaintiff on July 3, 2017. Before the Court is Defendant Milne's motion for summary judgment. For the reasons stated below, the motion is denied.

### I. Summary Judgement Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at

248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). "Thus, 'summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."' *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322 (1986))." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019). When deciding a motion for summary judgment, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## II. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted.)

Local Rule 56.1(a) requires the moving party to provide "a statement of material facts" as to which the moving party contends there is no genuine issue for trial. L.R. 56.1(a); Fed. R. Civ. P. 56(c)(1). The opposing party must then "file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted); L.R. 56.1(b), (e). If a party fails to respond to the Rule 56.1 statement of uncontested facts, those facts are deemed admitted to the extent they are supported by the evidence in the record. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); L.R. 56.1(e)(3). A plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"). However, the failure to comply with Local Rule 56.1 "does not, of course, automatically result in judgment for the movant." *Keeton*, 667 F.3d at 884. Instead, "[the movant] must still demonstrate that it is entitled to judgment as a matter of law." *Id.*

In this case, Defendant filed a Rule 56.1 statement of material fact with his motion for summary judgment. (Dkt. 102.) Because Plaintiff is a *pro se* litigant, Defendant also served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkts. 103, 104.) The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1. Further, the Court explained in detail the summary judgment process, in particular the requirements of Local Rule 56.1, to Plaintiff. Dkt. 98.

Plaintiff, for his part, filed a response to Defendant's motion for summary judgment, which includes Plaintiff's description of his arrest and arguments in opposition to Defendant's motion. (*See* Dkt. 108.) Plaintiff, however, did not respond to Defendant's Rule 56.1 statement of material fact.

Even generously construed, Plaintiff's submissions cannot be deemed an appropriate response to Defendant's statement of material facts.[1] Because Plaintiff has failed to properly respond to Defendant's Rule 56.1 statement, the Court accepts Defendant's "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton*, 667 F.3d at 880. Nevertheless, because Plaintiff is proceeding *pro se*, the Court will also consider the factual assertions in his summary judgment materials and his February 22, 2019 deposition about which he would be able to competently testify at a trial. *See* Fed. R. Evid. 602; *Williams v. Saffold*, No. 15 C 3465, 2016 WL 1660527, at *1 (N.D. Ill. Apr. 27, 2016); *Hill v. Officer Phillips*, No. 12 C 9404, 2014 WL 626966 at *1 (N.D. Ill. Feb. 18, 2014). With this discussion in mind, therefore, the Court recites the properly supported facts in Defendant's Local Rule 56.1(a)(3) statement and, where noted, Plaintiff's deposition testimony and decides whether, on those facts, Defendant is entitled to summary judgment.

## III. Relevant Facts

Around 3:30 a.m. on July 3, 2017, Defendant Nathan Milne, a patrol officer with the Rockford Police Department, responded to the Railroad Tap, a local Rockford bar, to assist with an investigation into a burglary at the bar.[2] (Dkt. 102, Defendant's Statement of Material Facts

---

[1] The improper submissions, however, appear to have little impact on the operative facts, as Plaintiff's recitation of the relevant facts is generally consistent with his deposition testimony and does not substantially differ from the facts presented by Defendant. Rather, it is in the parties' interpretation of those facts that they diverge.
[2] The record does not reflect precisely when the burglary occurred, but based on the record as a whole, it appears to

("DSOF"), ¶¶ 4-5.) Upon arrival at the bar, Officer Milne spoke with Rockford Officer Scharlau. (*Id.*, ¶ 6.) Scharlau, who had reviewed surveillance video of the burglary before Milne arrived, described the suspected burglar to Milne as a black man wearing a blue shirt and blue and white pajama pants. (*Id.*, ¶¶ 6, 7.)

This was not the first time Officer Milne had investigated a report of a burglary at the Railroad Tap. (DSOF, ¶ 8.) Milne had responded to an attempted burglary of the bar once before on November 29, 2016. (*Id.*) On that occasion, Milne viewed surveillance video of the incident and identified Plaintiff Antonio Williams as the would-be burglar on the video. (*Id.*) Officer Milne was familiar with Plaintiff at that time because he had previously interviewed Plaintiff in relation to a disorderly conduct complaint. (*Id.*, ¶ 9.)

Suspecting that Plaintiff may have again attempted to burgle the Railroad Tap on July 3, 2017, Milne used the data terminal in his squad car to search the Winnebago County Jail database for a photo of Plaintiff. (DSOF, ¶ 10.) Milne showed Plaintiff's photo to Officer Scharlau, who confirmed that Plaintiff was the individual he had seen on the surveillance footage. (*Id.*, ¶¶ 11-12.) Based on this identification, Milne drove in his squad car to the apartment building where Plaintiff and his mother lived. (*Id.*, ¶ 13.)

When Milne and a second officer, Officer Perone, arrived at the apartment, Plaintiff was standing in the driveway socializing with about eight other people. (*Id.*, ¶ 14; Dkt. 102-1, pg. 43.) Plaintiff was wearing a blue shirt and blue and white checkered pajama pants. (*Id.*, ¶ 15.) As Milne, who was dressed in his police uniform, got out of his car, Plaintiff began to walk away from him down an adjacent driveway. (*Id.*, ¶ 16.) Milne and another officer called to Plaintiff to stop, but

---

have been sometime earlier on July 2 or 3, 2017.

[5]

Plaintiff ignored the commands and then began running away from the officers.[3] (*Id.*, ¶ 17; Dkt. 102-1, pg. 45.) Plaintiff testified at his deposition that he ran from the officers because he was carrying a crack pipe and did not want to be caught with drug paraphernalia. (DSOF, ¶ 18.) Milne again yelled for Plaintiff to stop, but Plaintiff continued to ignore him. (*Id.*, ¶ 19; *see also* Dkt. 102-1, pg. 45.) Milne chased after Plaintiff and, catching up to him, grabbed Plaintiff's right arm. (DSOF, ¶ 20; Dkt. 102-1, pg. 47.) Plaintiff was wearing slippers and the grass was wet with dew, so he lost his balance when Milne grabbed his arm. (DSOF, ¶ 21.) Both Plaintiff and Milne fell to the ground. (*Id.*) Plaintiff testified that the area where they fell was in the middle of a large, grassy space behind the apartment building, bounded by a fence on one side, trees and shrubs on another, and a broken fence with a gap leading to an abandoned house on a third side. (Dkt. 102-1, pg. 47.) Plaintiff stated he and Milne were not near any houses, trees, or fences. (*Id.*)

When Plaintiff and Milne fell, Plaintiff landed on his side, pinning one of his arms under his body. (Dkt. 102-1, pg. 50.) Milne tried to gain control of Plaintiff's arms to handcuff him, but Plaintiff resisted giving Milne his wrist. (DSOF, ¶¶ 22, 23, 24; *see also*, Dkt. 102-1, pgs. 50-51.) According to Plaintiff, they "tussl[ed]" for his free arm. (Dkt. 102-1, pgs. 50-51.) When Plaintiff would not give Milne his arm, Milne hit Plaintiff once at the top of his head. (DSOF, ¶ 25; Dkt. 102, pg. 51.) Plaintiff then rolled over, freeing his pinned arm, and covered his face with the arm. (DSOF, ¶ 26.) Milne attempted to pull Plaintiff's hand away from his face, but Plaintiff would not allow him to do so. (*Id.*, ¶ 27.) In the statement of facts, Defendant describes this as active resistance to Milne's efforts to handcuff him. (DSOF, ¶¶ 24, 29.) Plaintiff, however, testified that he "was really too much worried about [Milne] punching [him] in [his] face" and so was more

---

[3] Plaintiff describes it as "trotting" in his deposition testimony. (Dkt. 102-1, pg. 46.)

focused on getting his hands over his face and head than on preventing Milne from putting handcuffs on him. (Dkt. 102-1.) At another point in his testimony, though, Plaintiff agreed with defense counsel's statement that he was "also trying to avoid being put in handcuffs." (Dkt. 102-1.) Milne, in the affidavit submitted with his summary judgment motion, simply states that Plaintiff "continued to pull away his hands from [Defendant's] many attempts to gain control and place him in handcuffs." (Dkt. 102-2, ¶ 16.)

When Milne was still unable to gain control of Plaintiff's hands, he punched Plaintiff in the face four times. (DSOF, ¶ 28.) Plaintiff testified that he curled his body into a fetal position and covered his head in an attempt to shield himself from the blows. (Dkt. 102-1, pg. 54.) After the punches, Milne states Plaintiff still was not submitting to handcuffs. (DSOF, ¶ 29.) Milne then deployed his Taser at Plaintiff. (*Id.*, ¶ 30.) The probes from the Taser appear to have made contact, but Plaintiff states he did not feel the effects.[4] (*Id.*, ¶ 31.) Officer Perone, who at some point had joined Milne and Plaintiff, attempted to remove Plaintiff's hands from his face and struck Plaintiff in the abdomen. (Dkt. 102-1, pgs. 54, 61.) This made Plaintiff move his hands from his face to his abdomen. (*Id.*, pg. 57.) Milne then hit Plaintiff's face three more times. (*Id.*, ¶ 32; *see also* Dkt. 102-1, pg. 65.) These final punches broke the skin on Plaintiff's forehead and left him dazed. (DSOF, ¶ 33.) At that point, Milne and the other officer present handcuffed Plaintiff and carried him to a nearby driveway. (*Id.*, ¶ 36.)

Milne observed blood coming from the cut on Plaintiff's head and requested that police dispatch send emergency medical personnel to check on Plaintiff. (DSOF, ¶ 35.) An ambulance arrived and transported Plaintiff to Swedish American Hospital to be treated for his injuries. (*Id.*,

---

[4] Defendant speculates that Plaintiff did not feel the Taser because he was under the influence of drugs at the time, (Dkt. 101, pg. 7), but this explanation appears to be just that—speculation.

¶ 37.) Plaintiff testified that he remained in the hospital for approximately two days, then left the hospital on his own and walked back to his mother's apartment, which was four blocks away from the hospital. (Dkt. 102-1, pg. 77, 79.) Plaintiff stayed with his mother for several days before he was arrested on July 9, 2017, while in front of the apartment. (*Id.*, pgs. 80, 81.) On April 24, 2018, Plaintiff pled guilty in Illinois Circuit Court to the burglary of the Railroad Tap and all other charges were dismissed. (DSOF, ¶ 40.) He was sentenced to two years incarceration. (*Id.*)

Plaintiff testified that he was left with permanent scars on his forehead and the top of his head as a result of Milne's punches. (Dkt. 102-1, pgs. 13-15.)

## IV. Analysis

The Court screened Plaintiff's complaint under 28 U.S.C. § 1915A, and based on the allegations in the complaint, allowed him to proceed on an excessive force claim against Defendant Milne.[5] (Dkt. 7.) Defendant has now moved for summary judgment and argues summary judgment should be entered in his favor because his use of force was reasonable in light of Plaintiff's continued refusal to submit to handcuffs. (Dkt. 101.) In the alternative, Defendant argues he is entitled to qualified immunity. (*Id.*) For the reasons that follow, Defendant's motion is denied.

---

[5] In his response to Defendant's motion for summary judgment, Plaintiff states Officers Milne and Perone "conspire[ed] together to make up a false police report[]" explaining how Plaintiff received the injuries to his face. (Dkt. 108, pg. 3.) Defendant interprets these statements as an attempt by Plaintiff to assert conspiracy and fabrication of evidence claims at the summary judgment stage. (*See* Dkt. 113, pg. 5.) The Court, however, understands Plaintiff to be arguing that Milne must have known he violated Plaintiff's rights because he attempted to conceal how Plaintiff received his injuries. Regardless, the Court has not considered the information about the police report, either as asserting new claims or as evidence in support of Plaintiff's arguments against summary judgment. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment," *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996), and any information regarding the police report is not properly before the Court. No mention is made of the report in Defendant's statement of facts. Neither did Plaintiff include the information in a properly supported statement of additional facts or affidavit. Accordingly, the Court reached its conclusion without considering Plaintiff's statements about the police report. As a last note on the scope of Plaintiff's claims, although it appears Officer Perone was involved in Plaintiff's arrest, Plaintiff identified only Officer Milne as a Defendant in this suit. (*See* Dkt. 8.) Therefore, other than to consider the effect of Perone's presence on Defendant and Plaintiff's interactions, the Court does not consider Perone's actions during Plaintiff's arrest.

### A. Objective Reasonableness

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000.) Although "the right to make an arrest . . . carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Graham v. Connor*, 490 U.S. 386, 396 (1989), the force used, "must be objectively 'reasonable' under the Fourth Amendment." *Chelios v. Heavener*, 520 F.3d 678, 689 (7th Cir. 2008); *see also Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002). Whether force is reasonable "requires an examination of the 'totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government[al] interests at stake.'" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (quoting *Jacobs*, 215 F.3d at 773). An evaluation of reasonableness must account "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Nonetheless, the Seventh Circuit has cautioned that "summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus*, 624 F.3d at 862. Factors relevant to the excessive force analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Here, Defendant argues his use of force was reasonable because Plaintiff resisted arrest and Defendant's use of increasing levels of force was proportional to Plaintiff's continued resistance. (Dkt. 101, pg. 6.) The Court is mindful that "[n]ot every push or shove, even if it may

[9]

later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Padula v. Leimback*, 656 F.3d 595, 602 (7th Cir. 2011) (alteration omitted). However, viewing the facts in the light most favorable to Plaintiff and applying the *Graham* factors, the Court cannot conclude that Defendant's use of force was reasonable as a matter of law.

As a preliminary matter, Defendant contends it was reasonable for him to have believed Plaintiff committed the burglary at the Railroad Tap earlier that day. (Dkt. 101, pgs. 3-4.) Plaintiff concedes he committed the burglary and does not contest that it was reasonable for Milne to suspect he had committed the offense at the time of the arrest. Moreover, Plaintiff would be hard-pressed to make any other argument given that Milne had confirmed that Officer Scharlau observed Plaintiff on video footage committing the burglary and that Plaintiff was wearing clothes identical to the burglar in the video. Thus, the Court agrees Defendant reasonably believed he was about to apprehend someone who had recently committed a burglary.

That, however, does not necessarily mean the offense entitled Defendant to employ more than minimal force to arrest Plaintiff. While, in general terms, burglary might be considered a serious crime, the record here suggests Plaintiff's offense fell on the less serious end of the spectrum. Nothing suggests Plaintiff used a weapon, made threats, or harmed anyone during the burglary. At most, the charging documents indicate Plaintiff broke one of the bar's windows. (Dkt. 102-4, pg. 3.) Thus, the nature of the offense suggests a lesser degree of force was merited to effectuate Plaintiff's arrest. *See Cyrus*, 624 F.3d at 863 (citing *Casey v. City of Federal Heights,* 509 F.3d 1278, 1281 (10th Cir. 2007) for the principle that force becomes less reasonable when the offense of arrest is not committed violently).

Relatedly, Plaintiff appears to have posed little threat to officers or the public. Nothing

indicates Plaintiff was carrying a weapon at the time of his arrest or that Defendant had reason to suspect he was. *See Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993) (where officer "had no particular reason to believe that [offender] was armed," officer was not entitled to summary judgment.) Defendant also did not encounter Plaintiff alone; at least one other police officer was present and assisting with the arrest. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) ("this is not the case of a single officer attempting to control and detain multiple suspects.") Even had Plaintiff managed to elude Defendant's efforts to handcuff him, the risk that Plaintiff could evade both officers for long was lessened, given that the parties were in the middle of a large field with no other people present.

Furthermore, although Defendant appeared intent upon detaining Plaintiff in the early morning hours of July 3, 2017, officers did not actually arrest, or it seems even monitor, Plaintiff after he was taken to the hospital. In fact, Plaintiff left the hospital unimpeded and walked back to his mother's residence, and then he was not actually arrested for another several days. If officers truly believed Plaintiff posed a threat to the public or that he would abscond before they could arrest him, it is perplexing that they would allow him to remain free at his mother's apartment (where they knew he was living) for approximately a week before taking him into custody.

Lastly, based on Plaintiff's version of events, a reasonable juror could conclude that, even if some force was initially warranted to stop Plaintiff from running away, repeatedly punching Plaintiff's face and head and deploying a Taser was not proportional to Plaintiff's resistance. Although officers "must be allowed 'to graduate their response to the demands of any particular situation," *United States v. Montoya de Hernandez,* 473 U.S. 531, 542 (1985) (quoting *United States v. Place,* 462 U.S. 696, 709 n. 10, (1983)), "force is only reasonable when it is proportional

to the threat posed." *Alicea v. Thomas*, 815 F.3d 283, 288 (7th Cir. 2016). "If an officer's threat perception changes, so too should her force calculus." *Id.* Moreover, force "becomes increasingly severe the more often it is used; striking a resisting suspect once is not the same as striking him ten times." *Cyrus*, 624 F.3d at 863.

Certainly, there is evidence that Plaintiff did not obey Defendant's commands to stop running and that he was at least not facilitating his own arrest. But once the parties were on the ground, Plaintiff's level of resistance indicates the circumstances likely called only for minimal force. Defendant characterizes Plaintiff as persistently and "actively resisting" and argues that this justified employment of progressively greater force to subdue him. But Plaintiff's deposition testimony, which must be accepted as true for purposes of summary judgment, paints a different picture. According to Plaintiff, after he fell to the ground and Defendant struck him the first time, he curled up on the ground with his arms protecting his face. While in this posture, Defendant punched him repeatedly—and hard enough to break skin—and used a Taser on him. While Plaintiff may have resisted Defendant's attempts to grab his arms, there is also no indication of Plaintiff directing any violence towards Defendant. Indeed, Defendant's own affidavit states only that Plaintiff pulled away from Defendant's attempts to apply handcuffs.

Thus, despite Defendant's attempts to cast Plaintiff's behavior as active resistance, Plaintiff's description appears more like "passive noncompliance," which is "of a different nature than the struggling that [courts] have found warrants escalation of force." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012). As the Seventh Circuit has explained, even "willful non-compliance" such as when an arrestee refuses to release his arms for handcuffing, "[is] not the same as 'actively resisting' but instead a passive 'resistance *requiring the minimal use of*

force.'" *Id.* (quoting *Smith,* 295 F.3d at 771); *see also Chelios*, 520 F.3d at 690 ("Although we might not use the terms 'docile and cooperative' to describe Mr. Chelios . . . a jury certainly could find that his conduct in no way warranted being tackled by three officers."). Notably, the "use of a taser 'is more than a *de minimis* application of force.'" *Abbott*, 705 F.3d at 726 (quoting *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009). Accepting Plaintiff's version of events indicates he was at most passively resisting arrest, and that the need for force in fact decreased as the interaction went on, contrary to Defendant's assessment that more force was needed. Consequently, even if some amount of force may initially have been required to stop Plaintiff's flight, a reasonable juror could reasonably conclude that, continuing to punch him in the face seven times and deploying a Taser was objectively unreasonable under the circumstances.

### **B. Qualified Immunity**

Next, Defendant argues that qualified immunity protects him from liability. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (internal quotation marks omitted). When evaluating whether qualified immunity applies, the court must ask "two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017).

For the law to be clearly established, a case directly on point is not required, but the "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "This is not to say that an official action is protected

by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As explained above, the facts taken in the light most favorable to Plaintiff may plausibly make out a violation of his constitutional rights. In addition, at the time of Plaintiff's arrest, it was well-established that it was objectively unreasonable for an officer to use significant force on a passively resisting subject. *See Abbott*, 705 F.3d at 732 ("it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects"); *see also Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). It was also clearly established that "only minimal force is warranted where the accused is passively resisting," *Becker*, 821 F.3d at 928-29; *Phillips*, 678 F.3d at 525, and that deploying a Taser under such circumstances would not be reasonable. *Abbott*, 705 F.3d at 732. This prohibition applies even though the arrestee may previously have refused to comply with officers' orders or even posed a threat to officer safety. *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014).

Given that Plaintiff's version of events plausibly suggests he was only passively resisting the attempts to handcuff him and that Defendant nonetheless punched Plaintiff at least eight times and deployed a Taser against him, Defendant is not entitled to qualified immunity.

## V. Conclusion

While a party moving for summary judgment need not affirmatively disprove his opponent's case, he still must establish that his opponent's position lacks evidentiary support. *Celotex*, 477 U.S. at 325. In other words, Defendant must show that the evidence is "so one-sided" that he "must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Given the parties' differing

interpretations of Plaintiff's level of resistance, a genuine dispute exists as to whether Defendant used "greater force than was reasonably necessary to make the arrest," *Becker*, 821 F.3d at 925 (internal quotation marks omitted). Defendant, therefore, has not met the threshold necessary for summary judgment and his motion for summary judgment is denied.

Date: June 29, 2021          By: _____
                                            Iain D. Johnston
                                            United States District Judge